**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | | |
|---|---|---|
| Alissa Hill, individually and as Personal Representative of the Estate of Troy Hill, | ) ) ) | **C/A No. 8:20-cv-1020-TMC** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Anderson County; Anderson County Detention Center; Anderson County Sheriff's Office; B. Heath Davis, in his individual and official capacities; G. Smith, in his individual and official capacities; Southern Health Partners, Inc.; Dr. James Walker; Nurse Krystal Jones, in her individual and professional capacities; Nurse Ashley Wilson, in her individual and professional capacities; and Nurse Lorie Shedd, in her individual and professional capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This action, which asserts claims against Defendants pursuant to 42 U.S.C. § 1983 as well state law, was originally filed in state court. (ECF No. 1-1). Defendants removed this case to federal court (ECF No. 1), and the matter was then referred to a magistrate judge for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.). Defendants Southern Health Partners, Inc., Dr. James, Nurse Krystal Jones, Nurse Ashley Wilson, and Nurse Lorie Shedd (the "Medical Defendants") subsequently filed a motion to dismiss a portion of the action. (ECF No. 39). Plaintiff filed a response in opposition, (ECF No. 43), and co-Defendants Anderson County, Anderson County Detention Center, Anderson County Sheriff's Office, B. Heath Davis, and G. Smith (collectively the "Law Enforcement Defendants") filed a response reflecting support for the Medical Defendants' motion for partial dismissal (ECF No. 42).

1

The Medical Defendants then submitted a reply (ECF No. 45) and Plaintiff filed a sur-reply (ECF No. 50).

Now before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court deny the Medical Defendants' motion to dismiss. (ECF No. 58). The Medical Defendants filed objections to the Report, (ECF No. 59), and Plaintiff filed a reply to the objections (ECF No. 60). This matter is now ripe for review. After carefully reviewing the record and the submissions of the parties, the court concludes a hearing is unnecessary to decide this matter.

## BACKGROUND[1]

In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. *See* (ECF No. 58). Briefly, this action stems from an April 21, 2016, dispute between Troy Hill and his son Josh on the one side and Brian Turner on the other. (ECF No. 34 at 5–6). Believing Troy had dropped his phone in Turner's car earlier in the evening, the Hills approached Turner and Troy asked if Turner had seen the phone. *Id*. at 6. Troy's next memory was waking up in his vehicle next to Josh; disoriented and in pain, Troy drove to his daughter's apartment nearby. *Id*. Law enforcement officials later found him there with a severe eye injury and lacerations to his face, requiring hospitalization for several days. *Id*. at 11–12.

Meanwhile, Anderson County Emergency Services received two 911 calls reporting that Turner's throat had been cut and that he was bleeding to death. *Id*. at 7. Investigators from the Sheriff's Office interviewed seven witnesses immediately following the incident, three of whom

---

[1] Because this is a motion to dismiss, the facts presented herein are taken directly from the Third Amended Complaint, (ECF No. 34), which is the operative pleading, and, where necessary for the court's analysis, the Second Amended Complaint as well, (ECF No. 1-2).

"stat[ed] that they had seen Josh stab Turner." *Id.* at 10.  Although several witnesses indicated Troy had driven Josh from the scene following the assault, none of the witnesses identified Troy as the assailant. *Id*. at 8–9. Furthermore, Turner, the victim, told investigators that he believed it was Josh Hill, not Troy, who slashed his throat. *Id*. at 12–13.  Nonetheless, despite knowing the foregoing information, Defendant Heath Davis procured a warrant for the arrest of Troy Hill for attempted murder. *Id*. at 14.  On May 15, 2016, Troy was taken into custody on the attempted murder charge and remained incarcerated until his release in March 2017 following the dismissal of the charge against him.  *Id*. at 2.

When Troy was processed into the Anderson County Detention Center ("ACDC"), "he informed the medical staff that he had been receiving treatment for the injuries he sustained from the attack."  *Id*. at 15.  Troy made numerous requests to the Medical Defendants, who were contracted to provide medical services at ACDC, for treatment of his facial injuries and relief from the associated headaches he was experiencing. In response, Troy was prescribed over-the-counter pain medication.  Troy also developed an infection while incarcerated at ACDC that, because of the Medical Defendants inadequate response to Troy's complaints, grew into a serious condition requiring a visit to the emergency room.

Ultimately, the attempted murder charge was dismissed, and, in March 2017, Troy was released from ACDC.  In April 2018, he filed this action in state court against the Law Enforcement Defendants, claiming that he was falsely arrested and incarcerated and asserting causes of action for false arrest and false imprisonment; malicious prosecution; intentional infliction of emotional distress; constitutional violations under § 1983; and negligence. (ECF No. 1-1).  In January 2020, while his action was still pending in state court, Troy filed an amended complaint adding the

Medical Defendants as parties and adding allegations that he received inadequate medical care during his detention at ACDC. (ECF No. 1-2).

On March 12, 2020, the Medical Defendants removed this action to federal court. (ECF No. 1). In June 2020, Troy died from a drug overdose. (ECF No. 34 at 21). Alissa Hill ("Plaintiff"), the duly appointed Personal Representative of Troy's estate, was substituted for Troy as the Plaintiff in this action. (ECF No. 31). On December 12, 2020, Plaintiff filed the Third Amended Complaint. (ECF No. 34).[2] The Third Amended Complaint added new allegations that Troy lost his job and all of his possessions as a result of the alleged false arrest and detention and that the injuries to his eye and face went untreated while he was detained at ACDC. *Id*. at 21. Plaintiff alleges that Troy, therefore, "began self-medicating" and eventually succumbed to a drug overdose in June 2020. *Id*. The Third Amended Complaint also added causes of action for wrongful death and negligence per se. *Id*. at 27–29, 32.

The Medical Defendants then filed this motion to dismiss "the wrongful death claim and all allegations relating to drug dependency and death as a result of [Troy's] detention from May 2016 to March 2017." (ECF No. 39-1 at 7). First, the Medical Defendants contend that South Carolina's wrongful death statute "requires that the decedent must have been able to bring the action himself had he lived." *Id*. at 4; *see* S.C. Code Ann. § 15-51-10. The Medical Defendants suggest that the applicable statute of limitations is the three-year limitations period for personal injury claims which would have barred Troy, had he lived, from bringing this action because "the medical care in this case took place from April 2016 to mid-March 2017" and his "death did not occur until June 2020, well over three years after his release from ACDC." (ECF No. 39-1 at 5).

---

[2] Although Plaintiff styled this pleading as the "Third Amended Complaint," it appears that it is only the second time the complaint has been amended. *See* (ECF Nos. 1-1, 1-2). For the sake of simplicity, however, the court will continue to refer to it as the Third Amended Complaint.

Therefore, the Medical Defendants conclude that because Troy "could not, himself, bring an action in December 2020 (or even now at the time of his death in June 2020) for his drug use, his personal representative cannot now do so for the heirs." *Id.* Second, the Medical Defendants argue that Plaintiff should not be able to amend the claims pending at the time of his death in June 2020 "to seek new damages related to drug use . . . over three years after the incident at issue." *Id*. 5–6. And third, the Medical Defendants maintain that "Plaintiff has not alleged (and cannot establish) legal causation as to the Medical Defendants for [Troy's] drug dependency and death." *Id*. at 6. In particular, the Medical Defendants contend that Plaintiff "has not alleged and cannot establish as a matter of law that prescription drug abuse and overdose in 2020 is *a foreseeable, natural and probable consequence* of the Medical Defendants' provision of medical *care over three (3) years earlier*." *Id*. at 6–7 (emphasis in original).

In the Report, the magistrate judge first rejected the Medical Defendants' argument that Plaintiff was barred by the three-year limitations period from bringing the wrongful death claim. (ECF No. 58 at 8). The magistrate judge read S.C. Code Ann. § 15-51-10 as imposing only two requirements: "(1) that 'the death of a person . . . be caused by the wrongful act, neglect or default of another'" and "(2) that 'the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof.'" (ECF No. 58 at 8 (quoting S.C. Code Ann. § 15-51-10)). The magistrate judge concluded that these two requirements were satisfied in this case because "at the time of his death, [Troy] was maintaining an action to recover damages for the wrongful acts, neglect, or default in question, thus satisfying the second requirement." *Id*. at 8–9. Further, the magistrate judge rejected the argument that Troy, "had he survived, would have been barred from recovering damages for any injury arising out of his self-medication, because . . . he had not yet specifically alleged [such]

5

injury," explaining that the requirements of S.C. Code Ann. § 15-51-10 "focus on the defendant's alleged *wrongful acts*," not "the *types of injuries* . . . decedent could have sought." *Id*. at 9.

Second, the magistrate judge disagreed with the Medical Defendants' position that Plaintiff cannot as a matter of law present sufficient evidence to establish that it was foreseeable the alleged conduct of the Medical Defendants would cause Troy's overdose and death, noting that the question of foreseeability is quintessentially one of fact for the jury. *Id*. at 11. The Report rejected this argument as conclusory and unsupported by relevant legal precedent, and recommended that the court deny the motion to dismiss on this particular basis but permit the Medical Defendants "to raise the same issue on a more fully developed factual record in a motion for summary judgment." *Id*. at 12.

Finally, to the extent Plaintiff seeks to recover injuries suffered by Troy himself, the magistrate judge first noted that such claims come within the purview of South Carolina's Survival Statute, *see* S.C. Code § 15-5-90, rather than the Wrongful Death statute, pursuant to which damages run to the decedent's statutory beneficiaries. (ECF No. 58 at 7, 13). Applying Rule 15 of the Federal Rules of Civil Procedure, the magistrate judge concluded that at this juncture in the litigation such new allegations related back to the earlier, second amended complaint which "placed the Medical Defendants on notice that they could be liable for [Troy's] injuries that were proximately caused by their alleged failure to provide him adequate medical care." *Id.* at 15. The Report explains that, "[a]t this stage of the proceedings, the record is silent as to when [Troy] began to self-medicate with illegally obtained prescription pain medication" and that "[w]ithout such information, the Medical Defendants cannot show that [Troy] unduly delayed in amending his pleadings to allege the facts concerning his self-medication and cannot show why any prejudice they might suffer from the addition of these facts would now be improper or unfair." *Id*.

6

Accordingly, the magistrate judge concluded that the Medical Defendants have not carried their burden of demonstrating "the self-medication allegations should not relate back to the date of [Troy's] pleading." *Id*.

### STANDARD OF REVIEW

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *See Matthews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Frazier v. Wal-Mart*, C.A. No. 6:11-1434-MGL, 2012 WL 5381201, at *1 (D.S.C. Oct. 31, 2012) (noting that "almost verbatim restatements of the arguments made in previously ruled upon discovery motions" are not specific objections); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to

Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

The Medical Defendants did not specifically object to the magistrate judge's analysis or conclusions with respect to the application of the statute of limitations to Plaintiff's wrongful death claim or as to whether Plaintiff could properly add allegations of self-medication and overdose in connection with the claims asserted in the second amended complaint. (ECF No. 59). Accordingly, the court reviews these portions of the Report for clear error. And, having reviewed the magistrate judge's analysis under the Rule 12(b)(6) standard articulated above and in light of the submissions of the parties, the court finds no clear error in these portions of the Report. Therefore, the court adopts the portions of the Report concluding that Plaintiff's wrongful death claim should not be

8

dismissed based on the statute of limitations and that the self-medication allegations relate back to the original claims against the Medical Defendants and that there is no undue prejudice or surprise in allowing the addition of such facts.

The Medical Defendants' objections to the Report do, however, specifically challenge the magistrate judge's analysis with respect to the issue of proximate cause. *Id*. at 3–5. Accordingly, the court must review this portion of the Report *de novo*. The Medical Defendants reiterated their argument that Troy's "abuse of prescription medications" could not be "a foreseeable, natural and probable consequence" of their allegedly inadequate medical care provided three years earlier. *Id*. at 3–4. In response to the magistrate judge's criticism that their motion failed to discuss or identify any relevant legal precedent, however, the Medical Defendants' objections identified two decisions in support of their position— *McKnight v. Just Care*, 684 S.E.2d 566 (S.C. Ct. App. 2009), and *Rice v. United States*, No. 2:17-cv-01992-DCN, 2019 WL 1330844 (D.S.C. March 25, 2019). In *McKnight*, the personal representative of a deceased former inmate brought a survival and wrongful death action against the South Carolina Department of Corrections and a contract medical services provider stemming from the former inmate's suicide after he was released from prison. *See* 684 S.E.2d at 567. The South Carolina Court of Appeals affirmed summary judgment against the personal representative plaintiff on the basis that "any deficiency in treatment was too attenuated from [former inmate's] death to have proximately caused it because he committed suicide over a year after his discharge." *Id. McKnight* reaffirmed the general principle in South Carolina that "suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render defendant civilly liable." *Watson v. Adams*, Civ. A. No. 4:12-cv-03436-BHH, 2015 WL 1486869, at *6 (D.S.C. March 31, 2015). *McKnight* provides only limited guidance, however, as Plaintiff here does not allege Troy

committed suicide. Rather, Plaintiff alleges the Medical Defendants simply failed to treat Troy's serious injury while he was detained at ACDC which resulted in "unbearable pain" that he tried to alleviate with "medication he was able to get from others." (ECF No. 34 at 21). Some courts have concluded, however, that a fatal drug overdose that was "non-volitional" might be actionable—that is, if "Defendant's failure to provide adequate medical care and Plaintiff's mental condition prevented him from realizing the nature of his act or controlling his conduct, then Plaintiff could, as a matter of law, demonstrate that Defendant was the proximate cause of Plaintiff's suicide attempt." *Wooten v. Cal. Dep't of Corr.*, 1:13-cv-00570-LJO, 2013 WL 4519454, at *3 (E.D. Cal. Aug. 26, 2013). Furthermore, in contrast to the instant case, *McKnight* was decided on summary judgment in light of evidence beyond the pleadings. The court is unable at this point in the litigation to conclude as a matter of law that Plaintiff cannot present sufficient evidence to establish proximate cause.

In *Rice*, the plaintiff brought a wrongful death and survival action against the United States after her husband, who had been treated for depression at the VA Medical Center, left the hospital against medical advice and was subsequently shot and killed by law enforcement officers after threatening his wife. *See* 2019 WL 1330844, at *1–2. The court granted the government's motion, concluding that "[e]ven taking the allegations in the complaint as true, the unforeseeable intervening acts and the time between [decedent's] discharge from the VA Medical Center and his death break the causal link between the government's medical care and [decedent's] death such that proximate cause cannot be established." *Id*. at *4–5. The court rejected the suggestion that the proximate cause "issue is inappropriate for a motion to dismiss" but would be better raised after additional discovery because "the intervening acts that affect proximate cause have already been established in the complaint" and "[n]o facts could develop during discovery that would alter

10

the existence of these intervening acts." *Id*. Here, in contrast to *Rice*, the allegations of the third amended complaint do not unequivocally establish an intervening act that could not be altered by evidence developed during subsequent discovery. Rather, the court concludes that it is best at this point to "adhere to the rule that proximate cause is ordinarily an issue resolved by the fact finder." *Estate of Mims v. S.C. Dep't of Disabilities & Special Needs*, 811 S.E.2d 807, 815 (S.C. Ct. App. 2018). The court agrees with the magistrate judge that, "considering the fact-intensive nature of the proximate cause inquiry, . . . the Medical Defendants' motion to dismiss as to the proximate cause issue [should be denied] without prejudice to their right to raise the same issue on a more fully developed factual record in a motion for summary judgment." (ECF No. 58 at 12). The discovery deadline has not yet passed, and the parties have until August 13, 2021 to develop additional evidence. (ECF No. 64). The court cautions Plaintiff, however, that should the proximate causation issue be presented again on summary judgment, Plaintiff will need to come forward with more facts and evidence than currently appear in the record.

## CONCLUSION

For the foregoing reasons, the court overrules the objections of the Medical Defendants (ECF No. 59) and adopts the Report and incorporates it herein (ECF No. 58). Accordingly, the court **DENIES** the motion of the Medical Defendants for partial dismissal of this action. (ECF No. 39).

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
June 21, 2021

11